Kristin Henry (CA Bar No. 220908)
Sierra Club
85 Second Street
San Francisco, CA 94104
(415) 977-5716
(415) 977-5793 FAX
kristin.henry@sierraclub.org

David Bookbinder (D.C. Bar No. 455525) Pro Hac Vice Application Pending
Sierra Club
408 C Street, NE
Washington, DC 20002-5818
(202) 548-4598
(202) 547-6009 FAX
david.bookbinder@sierraclub.org

Attorneys for Plaintiff Sierra Club

E-filing

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SIERRA CLUB, a non-profit organization,<br><br>     Plaintiff,<br><br>v.<br><br>DONALD RUMSFELD, in his official capacity as Secretary of the Department of Defense; and UNITED STATES DEPARTMENT OF DEFENSE,<br><br>     Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Administrative Procedure Act Case) |

C 06 3997

COMPLAINT

## INTRODUCTION

1.      Plaintiff Sierra Club brings this suit against Donald Rumsfeld, Secretary of the United States Department of Defense, and the United States Department of Defense ("DOD") in order to compel them to comply with the National Defense Authorization Act for Fiscal Year 2006 (the "Authorization Act"). In the Authorization Act, Congress mandated that Defendants complete a study on the effect of windmill farms on military readiness and the operation of military radar installations (the "Wind Report") by May 8, 2006. Although this deadline has passed, Defendants have yet to issue the Wind Report; indeed, it appears that DOD is still trying to define the scope of the project. As a result of Secretary Rumsfeld's and DOD's inability to follow Congress' orders, wind energy projects across the nation have been prevented from moving forward.

## JURISDICTION

2.      This court has jurisdiction over this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) (West 2006), as well as 28 U.S.C. § 1331 (West 2006) (federal question), 28 U.S.C. § 1346 (West 2006) (United States as a defendant), and 28 U.S.C. § 1361 (West 2006) (mandamus).

3.      The relief requested is specifically authorized pursuant to the APA, 5 U.S.C. § 706(1) (West 2006), 28 U.S.C. § 1651 (West 2006) (writs), 28 U.S.C. §§ 2201-02 (West 2006) (declaratory judgment and further relief), 28 U.S.C. § 2412 (West 2006) (costs and fees).

## VENUE AND INTRADISTRICT ASSIGNMENT

4.      Pursuant to Civil Local Rule 3-2(c), plaintiff states that it bases venue in this district and assignment to the San Francisco Division on the following: 1) plaintiff Sierra Club is incorporated in California and resides and maintains its headquarters in San Francisco County in this judicial district; 2) this action seeks relief against federal officials acting in their official

1

capacities; and 3) 28 U.S.C. §§ 1361 and 1391(e) (West 2006) provide for venue in the judicial district of a plaintiff's residence, including the San Francisco Division.

## **PARTIES**

5.    Plaintiff Sierra Club was founded in 1892 and is the nation's oldest grassroots environmental organization.  The Sierra Club is incorporated in California, and has its headquarters in San Francisco, California.  It has more than 750,000 members nationwide, including over 191,000 members in California.

6.    Sierra Club is dedicated to the protection and preservation of the natural and human environment.  One of the Sierra Club's national initiatives is finding solutions to the pressing problems of global warming, air pollution, and our national dependence on dirty, non-renewable energy sources such as nuclear power, oil and coal.  A central part of this initiative is to promote the use of clean energy sources.  Impediments to wind energy development undermine the Club's campaign to promote renewable energy sources.  In addition, our nation becomes more dependent on oil, coal and nuclear power when wind energy developments are impeded; which in turn exacerbate global warming and air pollution problems.

7.    Gas and electric companies throughout the nation allow their customers to purchase electricity generated specifically from wind energy.  Unfortunately, the demand for wind energy is higher than the supply of wind energy, and many customers, including Sierra Club members, cannot purchase their electricity from wind power.  For instance, Madison Gas & Electric allows its customers to purchase their electricity from wind energy.  However, the demand for wind energy exceeds the supply and many Wisconsin residents, including many Sierra Club members, are on a waiting list with Madison Gas & Electric to purchase their electricity from wind power.

2

COMPLAINT

8.     These gas and electric companies, including Madison Gas & Electric, cannot build new windmill farms nor purchase wind energy from other new windmill farms to meet the wind energy demand because, as discussed in detail below, Defendants' actions have created a de facto moratorium on new wind power projects.  Therefore, Defendants' actions are preventing Sierra Club members from purchasing clean, wind-generated power.

9.     Sierra Club has members in California, and across the nation, whose health, aesthetic and/or environmental interests have been, are being, and will continue to be adversely affected by the destructive impacts associated with nuclear power, coal and oil, our nation's increased reliance on such energy sources, and the inadequate supply of wind energy sources. Therefore, Club members' health, aesthetic, economic and/or environmental interests have been, are being, and will be adversely affected by Defendants' actions as set forth herein, which are impeding the development of wind energy nationwide.  Sierra Club brings this action on behalf of itself and its members.

10.     Defendant Donald Rumsfeld is the Secretary of the United States Department of Defense, and is named solely in his official capacity.

11.     Defendant United States Department of Defense is a Department of the Executive Branch of the United States Government.  The Department of Defense is an "agency" within the meaning of the APA, 5 U.S.C. § 701(b) (West 2006).

## FACTS

12.     On January 6, 2006, Congress enacted the Department of Defense Authorization Act for Fiscal Year 2006.  Section 358 of the Authorization Act requires that "[n]ot later than 120 days after the date of the enactment of this Act, the Secretary of Defense shall submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House

3

COMPLAINT

of Representatives a report on the effects of windmill farms on military readiness, including an

assessment of the effects on the operations of military radar installations of the proximity of

windmill farms to such installations and of technologies that could mitigate any adverse effects

on military operations identified." (emphasis added)

13.     May 8, 2006 was the first business day that was 120 days after the enactment of

the Authorization Act.

14.     The May 8, 2006 deadline has passed and Secretary Rumsfeld has failed to submit

to the Committees on Armed Services of the Senate and the House of Representatives the

required Wind Report.

15.     On March 21, 2006, DOD and the United States Department of Homeland

Security issued an "Interim Policy on Proposed Windmill Farm Locations," (the "Interim

Policy") which states that the "DOD/DHS [Department of Homeland Security] Long Range

Radar Joint Program Office Interim Policy is to contest any establishment of windmill farms

within radar line of site [sic] of the National Air Defense and Homeland Security Radars.  This

[Interim Policy on Proposed Windmill Farm Locations] is to remain in effect until the

completion of the study and publishing of the Congressional Report."

16.     In order to operate and construct a windmill farm, an energy developer must

obtain a notice from the Federal Aviation Authority (FAA) stating that the installation is not a

hazard to air navigation.

17.     The FAA is interpreting the "Interim Policy" to mean that it cannot issue such a

notice to a proposed windmill farm that is within radar line of sight of any National Air Defense

and Homeland Security Radar.  Instead, the FAA has been issuing "Notices of Presumed

Hazard," which contain statements such as the following (emphasis added):

4

COMPLAINT

At the discretion [sic] of Congress, the Secretary of Defense is tasked to submit a report on the effects of windmill farms on military readiness. This report is to include an assessment of the effects of windmills on the operations of military radar installations, proximity of windmill farms to such installations and of the technologies that could mitigate any adverse effects on military operations.

The Department of Defense and the Department of Homeland Security Long Range Radar Joint Program Office Interim Policy is to contest any establishment of windmill farms within radar line of site of the National Air Defense and Homeland Security Radars.  This is to remain in effect until the completion of the study and publishing of the Congressional Report.

This study should be completed by summer 2006.   Therefore, <u>the Federal Aviation Administration concurs with the development of wind turbines within the radar line-of-sight and recommends that the subject proposal be delayed until the comprehensive analysis is completed.</u>

18.     Since much of the nation is "within radar line of sight," the Interim Policy and the FAA's implementation of that policy have created a de facto moratorium on new wind power projects in our nation, and this will continue until Defendants complete and publish the Wind Report.

## COUNT 1

19.     The Administrative Procedure Act, 5 U.S.C. § 702 (West 2006), provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The APA defines "agency action" to include an agency's "failure to act," 5 U.S.C. §§ 701(2), 551(13) (West 2006).

20.     The APA, 5 U.S.C. § 706(1) (West 2006), further provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."

21.   By failing to issue the Wind Report as required under Section 358 of the Department of Defense Authorization Act for Fiscal Year 2006, Defendants have violated the APA by unlawfully withholding and/or unreasonably delaying performance of a statutory duty owed to the Plaintiff and thousands of individuals who have an interest in developing wind energy in this nation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter an order:

(a)   Declaring that Defendants' have unreasonably delayed and unlawfully withheld issuing the Wind Report in violation of the Administrative Procedure Act;

(b)   Ordering Defendants to issue the Wind Report within 45 days of the entry of this Order;

(c)   Retaining jurisdiction of this action to ensure compliance with its decree;

(d)   Awarding Plaintiff's their attorney's fees and all other reasonable expenses occurred in pursuit of this action; and

(e)   Granting other such relief as the Court deems just and proper.

Dated: June 28 , 2006

Respectfully submitted,

KRISTIN A. HENRY, CA Bar No. 220908
SIERRA CLUB
85 Second Street, 2nd Floor
San Francisco, CA  94105-3459
Tel: (415) 977-5716
Fax: (415) 977-5793
kristin.henry@sierraclub.org

6

COMPLAINT

DAVID BOOKBINDER, D.C. Bar No. 455525
SIERRA CLUB
408 C Street, NE
Washington, DC 20002-5818
Tel: (202) 548-4598
Fax: (202) 547-6009
david.bookbinder@sierraclub.org

Attorneys for Plaintiff Sierra Club

7

COMPLAINT

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated:  June  28  , 2006

Kristin Henry
Sierra Club
Attorney of Record

8